**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| RAS SAGARAL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-05-3599 |
| | § | |
| WAL-MART STORES TEXAS LP, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

The plaintiff, Ras Sagaral, has sued his former employer, Wal-Mart Stores Texas, L.P. ("Wal-Mart"), under the Texas Labor Code. Wal-Mart timely removed on the basis of diversity jurisdiction. Sagaral alleges that Wal-Mart unlawfully denied him merit increases and terminated his employment based on race and age discrimination and in retaliation for his complaints about discrimination. Sagaral also asserts an intentional infliction of emotional distress claim. Wal-Mart has moved for summary judgment on all Sagaral's claims. (Docket Entry No. 32). Sagaral has responded, (Docket Entry No. 33), and Wal-Mart has replied, (Docket Entry No. 34). Based on a careful review of the motion, response, and reply; the pleadings; the record; and the applicable law, this court grants Wal-Mart's summary judgment motion as to all the claims. Final judgment will be entered by separate order. The reasons for this decision are set out below.

**I.       Background**

Sagaral began working for Wal-Mart on November 30, 1999.  He transferred from a Pennsylvania store to Katy, Texas in January 2001.  Sagaral worked in the photo department.  During his employment, Sagaral received several commendations for his work, including "great job" buttons.  By 2004, Sagaral had earned enough buttons to entitle him to one share of Wal-Mart stock.  The commendations were for his salesmanship, including attention to customer service, high sales figures, and knowledge of the store's photographic merchandise.

From the beginning of his employment, Sagaral frequently used the company's "open-door" policy to communicate with management.  Between April 2000 and May 2005, Sagaral wrote at least sixteen letters to various members of management addressing concerns ranging from where the store put pesticides, to violations of the company's fraternization policy, to his own requests for merit increases, to allegations of race and age discrimination.  (Docket Entry No. 33, Ex. 6).  The letters included several sent directly to Wal-Mart's top management and to the manager of the Katy, Texas store.

Wal-Mart evaluates employees' performance on an annual basis.  (Docket Entry No. 33, Ex. 2 at 19:11–23:1).  If an employee receives a "meets" or "exceeds expectations" evaluation, Wal-Mart will award that employee a pay increase.  In addition to raises for high annual performance evaluations, Wal-Mart employees may also be eligible for a $.50 per hour merit-based pay increase.  Brad Coonfield, Wal-Mart's district manager for the district that included the Katy, Texas store, testified that an employee is given a merit increase for "going above and beyond" the normal job responsibilities.  (*Id.* at 23:6–10).  Store managers

have discretion to award merit increases and may consider the input of the department managers. (*Id.* at 23:17–24:13).

Under Wal-Mart's written policy, employees are eligible to receive a merit increase if they:

- have worked for the company for at least one consecutive year;

- do not have an active "coaching" on file;[1]

- do not currently have a "below performance" evaluation rating;

- have not received a merit increase within the last twelve months;

- received their last annual performance evaluation more than six months ago;

- are at least ninety days prior to their anniversary date; and

- exhibited exceptional performance and exceptional results in the execution of their job responsibilities.

(Docket Entry No. 32, Ex. H). Additionally, no more than five percent of any store's eligible employees may receive a merit increase during any twelve-month period. (*Id.*).

The summary judgment record shows that Sagaral received high marks in his annual evaluations. On October 23, 2000, Sagaral received a "meets expectations" review; on September 10, 2001, "exceeds expectations"; on September 15, 2002, "exceeds expectations"; on October 20, 2003, "meets expectations"; and on November 5, 2004, "exceeds expectations," which had been changed from "meets expectations." (Docket Entry

---

[1] A "coaching" occurs when an employee's behavior fails to meet Wal-Mart's expectations. It is designed to correct that behavior by developing a plan to assist the employee in taking responsibility for their behavior. A coaching can be done either verbally or in writing. (Docket Entry No. 32, Ex. J).

No. 33, Ex. 7).  The 2004 evaluation stated that Sagaral "needs to learn how to print and operate the photo-processing machines so that he ca[n] help the team provide even better customer service inside the lab as well as outside the lab." (*Id.*).  The district manager, Mike Welsch, stated that Sagaral was initially given a "meets expectations" review in 2004 because he did not perform the photo-processing part of his job.  Welsch changed that rating when Sagaral insisted that he had only known of this concern for a short period, not the entire year.  (Docket Entry No. 32, Ex. B-4).  Sagaral received performance-evaluation pay increases each year, but did not receive additional merit increases.

On May 24, 2000, Sagaral made his first written request for a merit increase.  At that time, Sagaral had been working at the Wal-Mart in Pennsylvania for approximately six months.  He sent a letter to the store manager, Rick Phillips, pointing to his receipt of two "great job" buttons, increased sales, and other positive feedback from customers and coworkers, which he believed warranted a merit raise. (Docket Entry No. 33, Ex. 5).  Sagaral did not receive the increase.  Sagaral had been a Wal-Mart employee for less than one year, making him ineligible for a merit raise according to company policy.  Sagaral did not complain at that time that this denial was because of his age or race.

On October 26, 2002, nearly two years after his transfer to the Katy, Texas store, Sagaral sought another merit increase.  In a letter sent to photo-lab manager Tamela Ford, Sagaral pointed out that his work had resulted in increased disposable-camera sales and that he had received six "great job" buttons. (*Id.*).  Sagaral's request was denied.  The summary judgment evidence shows that Sagaral made this request approximately six weeks after

receiving his annual performance evaluation and raise, making him ineligible for a merit increase under company policy.  Sagaral stated in his deposition that he complained to Ford that he believed this denial was discriminatory.  (Docket Entry No. 33, Ex. 1 at 80:9–82:19).  According to Sagaral, Ford said that she would address these concerns with Mike Welsch, the district manager.

Sagaral's third written request for a merit increase came on January 3, 2003 in a letter to Mike Welsch.  The letter followed a conversation in which Welsch said that he had received a copy of Sagaral's request for a merit increase but could not approve it because he was unfamiliar with Sagaral's work.  (Docket Entry No. 33, Ex. 5).  In the January 3, 2003 letter, Sagaral contended that the increase was justified based on his seven "great job" buttons, his sales record, and his loyalty to the store.  Sagaral argued that he had refrained from seeking a merit increase during 2001 and much of 2002 "for the simple reason that the Photo Center was in dire financial strait [sic], and therefore, was inappropriate for me to seek for [sic] merit increase during such period."  (Docket Entry No. 33, Ex. 6).  Sagaral's request did not come more than six months after his last performance evaluation, making him ineligible for the increase he sought under the company's policy.  Wal-Mart also contends that Sagaral's discrimination claims as to the first three merit-raise requests are not actionable because Sagaral did not raise them timely.  (Docket Entry No. 32 at 10–11).  That contention is addressed below.

Sagaral made his fourth request for a merit increase on August 3, 2004 in a letter to his department manager, Bryan Smith.  (Docket Entry No. 33, Ex. 5).  The letter followed

two conversations between Smith and Sagaral about a merit-raise request.  Sagaral argued that he deserved a merit increase because of his four-year career with the company, his receipt of twelve "great job" buttons, and other accomplishments.  Sagaral's request came more than ninety days before his anniversary date (November 30), and more than six months from his last annual review (October 20, 2003).  Sagaral was not being coached for any infractions, had worked for Wal-Mart for more than one consecutive year, and had not received a merit increase in the previous year.  Although Sagaral was eligible to be considered for a merit increase, his request was denied.  The record is not clear when he received this denial.

On November 4, 2004, Sagaral wrote Tom Coughlin, then-president and CEO of Wal-Mart and Sam's Club USA, alleging age and race discrimination.  (Docket Entry No. 33, Ex. 5).  In the letter, Sagaral asserted that the denials of his requested merit increases were made without regard to his consistent hard work and receipt of numerous "great job" buttons.  He claimed that 2004 "meets expectations" review was "intended to deprive me of merit and higher pay increases."  (The review was changed on November 5, 2004 to "exceeds expectations" based on Sagaral's argument that he had only learned of management's concern that he perform the photo-processing duties in the last few months of the prior year.) Sagaral argued that Mike Welsch favored younger employees, pointing to his treatment of a photo-department manager, Bryan Smith, who had gone on an extended leave.  Sagaral complained that Welsch had not told the store's employees of Smith's whereabouts and that they felt "abandoned."  Sagaral also complained that Smith had not been disciplined for

6

allowing photo-lab employees to work with dangerous chemicals without protective gear. Sagaral also claimed that two other employees had received discriminatory treatment.  He identified a 55 year-old employee named Gerald who had applied for and was denied two promotions to department manager despite three years of experience and receipt of a merit increase; the jobs were given to younger applicants.  "Evidently, Gerald was discriminated against . . . solely because of his age." (*Id.*).  Sagaral also alleged that an employee named Bobby was terminated because he was "old, heavy, and slow."  (*Id.*).[2]

Welsch responded to Sagaral in a letter dated November 5, 2004.  (Docket Entry No. 32, Ex. B-4).  Welsch explained that Sagaral was not awarded a merit increase in August 2004 because he was not exceeding expectations in every aspect of the job.  Welsch stated that Sagaral was unfamiliar with the photo-processing equipment and focused too much on the sales aspect of the job.  Welsch stated that he and Smith had previously talked to Sagaral and told him the areas in which he needed to improve.  Welsch denied that age or race played a role in the decision not to award Sagaral a merit increase in addition to the pay raise he received for the positive evaluation.

Welsch also responded to Sagaral's allegations that other employees had been unfairly treated.  Welsch explained that he did not hire Gerald because the two positions at issue were filled with applicants with more experience.  Welsch explained that Bobby's termination was performance related.  Welsch stated that management made the decision not to inform the

---

[2] Sagaral wrote a second letter to Coughlin on November 17, 2004.  (*Id.*).  The letter restated the allegations in the November 4, 2004 letter.

employees about Smith's absence and that the department had received adequate assistance while Smith was out. Welsch stated that he was unaware of any issues relating to photo-lab employees working with chemicals without proper protection. Welsch denied that age or race was a motivating factor in any of the decisions Sagaral complained about in his letter to Coughlin.

Wal-Mart has submitted evidence relating to "Bobby," one of the employees Sagaral mentioned in his letter. The summary judgment record shows that Bryan Smith had fired Robert Williams ("Bobby") on November 17, 2003, after repeated warnings. (Docket Entry No. 33, Ex. 8). Smith had given Williams three warnings and identified the performance areas that he needed to improve. After Williams showed no improvement, he was fired. The job termination was within the first ninety days of Williams's employment.

Wal-Mart conducted an internal investigation into Sagaral's discrimination claims. (Docket Entry No. 33, Ex. 8). The record shows that the district manager, Brad Coonfield, conducted the investigation. Coonfield interviewed Mike Welsch, Bryan Smith, Joe Aubry (an assistant store manager), and George Rivera (the photo-lab department manager who was promoted instead of Gerald). Coonfield also interviewed Sagaral twice, once on November 4, 2004 and again on November 17, 2004. After the investigation, Coonfield concluded that each of Sagaral's allegations of discrimination was unfounded and that Sagaral's merit-raise request was denied because he had not performed all his photo-processing responsibilities at a level that would justify the increase.

On December 20, 2004, Sagaral's employment was terminated.  Sagaral contends that his job termination was based on his age and race and was in retaliation for the complaints of discrimination he had made the prior month.  Wal-Mart has provided evidence of the reason it fired Sagaral.  According to Wal-Mart, on December 10, 2004, Sagaral violated the company's sexual-harassment policy by touching Alma "Kathy" Sanchez's breast.  Sanchez complained to the store's assistant manager, Joe Aubry, who reported the incident to the store manager, Barry Jones.  A ten-step internal investigation followed.  (Docket Entry No. 33, Ex. 9).  The investigation file contains notes of interviews conducted with each of the employees involved and the written statements of those employees.

The investigation revealed that this was not the first time Sagaral had been accused of inappropriately touching Sanchez.  Nor was Sanchez the only coworker who made complaints of inappropriate behavior by Sagaral.  In September 2004, Sanchez complained to Jorge Rivera, her supervisor at the time, that Sagaral touched her on the rear pants pocket. Sagaral allegedly patted Sanchez on her pocket and asked her what was in it.  (Sanchez was carrying a cell phone in the pocket.)  Sanchez asked him not to do that.  (Docket Entry No. 32, Ex. D).[3]  Sanchez reported this incident to Rivera, who failed to conduct any follow-up investigation.  Rivera was later reprimanded and coached for this transgression.

---

[3]  During the investigation, Sanchez wrote a small part of her statement in English; most was in Spanish.  Brad Coonfield testified that a bilingual member of Wal-Mart's management team translated her statement, (Docket Entry No. 33, Ex. 2 at 119:13–120:3), which was produced to the plaintiff in this case, (Docket Entry No. 32, Ex. D).  No objection has been made to the statement's translation.

Sanchez complained that a short time later, Sagaral grabbed a lanyard around her neck carrying her nametag and "great job" buttons, touching her chest.  He did this on several occasions.  The touching stopped briefly then started again in early December 2004.  Sanchez stated that "he raises my badge and gets to touch my chest lightly," making her feel uncomfortable and nervous.

Daniela Syzdek, a coworker, provided a statement in which she verified Sanchez's allegations:

> This is to explain what has been going on in the photo lab for some time with Kathy and Ras.  Ras is repeatedly touching Kathy for no reason.  I notice he is always rubbing up against her and touching her back or shoulder.  Kathy wears a Wal-Mart name badge holder, it has pins all over it.  It always looks the same, but Ras always has to touch it.  He grabs it right at her breast and lifts on it, when he does this he touches her breast with his finger.  I have seen him do this a couple of times.
>
> A couple of times Ras made statements to me that I considered to be inappropriate.  He said it loud enough so associates and customers were able to hear. [The first time, he said] "You are a beautiful woman." [The second time, he said] "You are a very sexy woman."  It caught me off guard and embarrassed me.

(Docket Entry No. 33, Ex. 9).

Monica Ruiz, another coworker, complained on December 20, 2004 (the date Sagaral's employment was terminated) that Sagaral had inappropriately touched her the previous spring.  In April 2004, according to Ruiz, Sagaral had touched her leg "trying to wipe what I had on my pants."  (*Id.*).  Ruiz slapped his hand away.  In May 2004, Sagaral tried to touch Ruiz's vest.  Ruiz raised her hand to slap his away, and Sagaral retreated.  Ruiz

stated that Sagaral's actions made her feel uncomfortable.  (*Id.*).  Ruiz explained that she had

not previously reported these incidents because she felt that she had handled the situation and

did not care for any more "drama."  Another coworker, Neva O'Neal, told Wal-Mart on

December 17, 2004, that Sagaral "is always pulling at my pocket and saying 'Give me your

money.'"  O'Neal stated that Sagaral would pull at her name tag and jokingly say, "Give me

this."

The investigation file also contains two written statements from Sagaral.  In a

handwritten statement on December 14, 2004, Sagaral stated that the incident with Sanchez

was misinterpreted.  (*Id.*).  He stated that he was merely "appreciating" her "great job" button

"by touching [it]," but did not otherwise touch her inappropriately.  In a typed letter dated

December 15, 2004, Sagaral inconsistently contended that he had been four feet away from

Sanchez when he admired her buttons and did not touch her.  In the December 14 statement,

Sagaral also stated that Syzdek had misunderstood what he had said, explaining that if he did

make the comments she described, they were directed toward other people, not Syzdek.  He

stated that the comments he allegedly made to Syzdek were made in reference to "a young

customer about 18 to 20 years old, [and] after paying and leaving, I made an honest and

appreciative comment that she was beautiful and sexy mainly because of the colorful skirt

she was wearing."  (*Id.*).

Sagaral denied all of the charges against him and alleged that they were fabricated as

part of a conspiracy to terminate him for his frequent complaints to management.  Sagaral

accused Aubry of wanting to "get rid of him" because he was afraid Sagaral would tell

management about his affair with a subordinate.  Sagaral accused Sanchez of fabricating the charge against him because she was "mad" at him for repeatedly telling her to return to work and to stop hanging around the photo department.  (*Id.*).

After the investigation, Wal-Mart concluded that Sagaral had violated the company's PD-19 sexual harassment / inappropriate conduct policy.  Wal-Mart concluded that Sagaral's behavior constituted gross misconduct, warranting job termination.  (Docket Entry No. 32, Ex. F).  Brad Coonfield testified that Sagaral's job was terminated because "[n]umber one, he touched a lady on the breast.  Number two, there were a number—several associates that either saw this, witnessed it.  Number three, they were scared of Ras."  (Docket Entry No. 33, Ex. 2 at 41:9–12).

In relevant part, PD-19 defines sexual harassment as "[s]exually oriented kidding, teasing, or practical jokes" and as "[p]hysical contact such as patting, pinching, or brushing against another's body suggestively or offensively."  (Docket Entry No. 32, Ex. E).  Under the policy, the conduct must have been so severe or frequent that it created an offensive atmosphere for one or more employees, adversely affecting that person's attendance, conduct, or job performance.  The policy states that violators may be subject to penalties ranging from coaching to termination; employees terminated under the policy are not eligible for rehire.  (*Id.*).  The policy further states that "[e]very substantiated instance of harassment / discrimination / inappropriate conduct will be addressed through the Coaching Policy (PD-30) . . . to ensure the conduct will not occur again."  (*Id.*).  The company's "Coaching for

Improvement Policy," PD-30, states that employees who have engaged in gross misconduct are subject to immediate termination.  (Docket Entry No. 32, Ex. J).

Sagaral filed a discrimination charge with the Texas Workforce Commission and the EEOC on February 9, 2005, alleging age and race discrimination and retaliation.  (Docket Entry No. 32, Ex. G).  Sagaral was issued a right-to-sue notice on August 17, 2005 and timely filed this suit.  (Docket Entry No. 1, Ex. 1).

In responding to the summary judgment motion, Sagaral also submitted his own deposition testimony that a coworker named Lisa had told him that the assistant store manager, Joe Aubry, had told her that he wanted "younger people here to work."  (Docket Entry No. 33, Ex. 1 at 184:24–186:16).  Sagaral could not recall when Lisa said this.  Sagaral also testified that Aubry made this comment directly to him, but he could not recall when.  (*Id.* at 186:19–187:11).  Sagaral contends that Wal-Mart treated Aubry more favorably than it treated him.  Aubry, an Hispanic male in his mid-30s, was fired in March 2005 for violating the company's fraternization policy, PD-22, by having a consensual sexual relationship with a coworker in August 2004.  The version of the PD-22 policy then in effect provided that first-time offenders were eligible for rehire after ninety days.  (Docket Entry No. 32, Ex. I).  Aubry's exit evaluation form stated that as a first-time infringer, he was eligible for rehire.  (Docket Entry No. 33, Ex. 10).  Aubry was rehired in June 2005.  (Docket Entry No. 33, Ex. 2 at 38:18–39:2).  Sagaral argues that Wal-Mart's refusal to rehire him and its decision to rehire Aubry amounts to a discriminatory application of the company's disciplinary policies.  Wal-Mart responds that Sagaral and Aubry are not similarly situated

in part because they violated two different policies, one that did not provide for rehire and one that did. Wal-Mart argues that its application of PD-19 to Sagaral was not discriminatory.

The parties' arguments are analyzed in detail below.

## II.     The Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). If the burden of proof at trial lies with the nonmoving party, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element or claim. *Celotex*, 477 U.S. at 330. The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). "An issue is material if its resolution could affect the outcome of the action." *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). If the moving party fails to meet its initial burden, the summary judgment motion must be denied, regardless of the

nonmovant's response. *Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim. *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 302 (5th Cir. 2004). This burden is not satisfied by "some metaphysical doubt as to the material facts," "conclusory allegations," "unsubstantiated assertions," or "only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 (5th Cir. 1994).

In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. "Rule 56 mandates the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## III.   The Race, Age, and National-Origin Discrimination Claims

Sagaral asserts age, race, and national-origin discrimination, in violation of the Texas Commission on Human Rights Act (TCHRA), TEX. LAB. CODE § 21.001 *et seq.* Claims brought under Chapter 21 are analyzed in the same manner as claims brought under Title VII. *See Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 n.10 (5th Cir. 2001) (citing

*Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 n.2 (5th Cir. 1999) ("[T]he law governing claims under the TCHRA and Title VII is identical.")); *see also Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001) (stating that Texas courts rely on precedent under Title VII when construing Chapter 21 of the Texas Labor Code); *Baehler v. Fritz Indus., Inc.*, 993 S.W.2d 181, 183 (Tex. App.—Texarkana 1999, pet. denied) (same).

Wal-Mart contends that Sagaral failed to exhaust his administrative remedies as to his national-origin claim because he did not make that allegation in his discrimination charge to the Texas Workforce Commission and the EEOC.  In his petition filed in the Texas state court, Sagaral combined the race and national-origin claim as one ground for relief under the heading "Plaintiff's Claim for Race / National Origin Discrimination."  (Docket Entry No. 1, Ex. 1).  Sagaral's discrimination charge stated that he had been subjected to race and age discrimination and retaliation.  The charge form provides space for making a national-origin discrimination claim; Sagaral left that space blank.

In a discrimination case, the district court does not have subject-matter jurisdiction until the "EEOC has first had the opportunity to obtain voluntary compliance." *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006).  The relevant question is whether the claims presented in the district court could "reasonably be expected to grow out of the charge of discrimination" presented to the EEOC. *Id.*; *Anderson v. Lewis Rail Serv. Co.*, 868 F.2d 774, 775 (5th Cir. 1989).  Investigation into Sagaral's race-discrimination charge would reasonably lead to investigation into a national-origin discrimination charge.  *See Ang v. Procter & Gamble Co.*, 932 F.2d 540, 546 (6th Cir. 1991) ("Because [the plaintiff's] race and

16

Indonesian ancestry are closely related and may have both contributed to any discrimination he suffered, the district court could have concluded that an investigation could reasonably include discrimination based on race and national origin."). This court concludes that it has jurisdiction over Sagaral's national-origin discrimination claim.

### A.      The Legal Standard under the TCHRA and Title VII

Under Title VII, it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). The inquiry under Title VII is "whether the defendant intentionally discriminated against the plaintiff." *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004).

When a plaintiff presents proof of alleged discrimination through indirect or circumstantial evidence, the claim is considered under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), recently modified in *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), and *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305 (5th Cir. 2004). Under the modified *McDonnell Douglas* approach, the plaintiff has the initial burden of making a *prima facie* showing of race and sex discrimination. *Abarca v. Metropolitan Transit Auth.*, 404 F.3d 938, 941 (5th Cir. 2005); *Rachid*, 376 F.3d at 312. A plaintiff satisfies this burden by showing that: (1) she is a member of a protected group; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) after she was discharged, she was replaced with a person who is not a member of the

protected class. *Frank v. Xerox Corp.*, 347 F.3d 130, 137 (5th Cir. 2003); *Okoye v. Univ. of Tex. Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001); *see also Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005) ("To establish a *prima facie* case of discrimination under § 1981, Appellants must establish that they: (1) are members of a protected group; (2) were qualified for the position held; (3) were discharged from the position; and (4) were replaced by persons outside of the protected group."). The fourth prong may also be met if a plaintiff shows that she was "treated differently from others similarly situated." *Abarca*, 404 F.3d at 941.

If a plaintiff makes a *prima facie* showing, the burden shifts to the defendant to articulate a "legitimate, nondiscriminatory reason" for the adverse employment decision. *Cullwell v. City of Fort Worth*, 468 F.3d 868, 873 (5th Cir. 2006). If a defendant can produce such evidence, the presumption of discrimination dissolves. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142–43 (2000); *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002). The plaintiff must then offer evidence to create a fact issue "either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motives alternative)." *Rachid*, 376 F.3d at 312 (internal quotation and alteration marks omitted); *see also Cullwell*, 468 F.3d at 873; *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005) (analyzing a Title VII claim under the modified approach).

In a mixed-motive case, if the plaintiff shows that the illegal discrimination was a motivating factor, the defendant must respond with evidence that the same employment decision would have been made regardless of discriminatory animus. *Rachid*, 376 F.3d at 312. The plaintiff has the ultimate burden of showing a genuine issue of material fact on whether the defendant discriminated against her on the basis of the plaintiff's membership in the protected class. *Reeves*, 530 U.S. at 143.

### B. Analysis

#### 1. The Claim Based on the Denials of Merit Increases

Sagaral requested a merit increase at least four times during his employment with Wal-Mart: on May 24, 2000; October 26, 2002; January 3, 2003; and August 3, 2004. Wal-Mart argues that only the last of Sagaral's four rejected requests for a merit increase are actionable because Sagaral failed to file a timely claim with the Texas Workforce Commission when the first three requests were rejected. Sagaral does not address this argument in his response to Wal-Mart's summary judgment motion.

The Texas Labor Code provides that a plaintiff must file a charge of discrimination with the Texas Workforce Commission within 180 days of the discriminatory act. TEX. LAB. CODE § 21.202(a). Sagaral did not file a claim of discrimination with the Texas Workforce Commission until February 9, 2005. As a result, only the merit-increase request made on August 3, 2004 was timely raised.[4] The denials of merit-increase requests are not continuing

---

[4] The 180-day limitations period begins to run when the plaintiff is notified that his request was denied. *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 493 (Tex. 1996). The record does not indicate exactly when Sagaral received notice that his fourth request for a merit increase was denied, although

violations so as make the earlier denials of requested merit increases actionable.  The continuing-violations rule extends the limitations period on otherwise time-barred claims when the unlawful employment practice manifests itself over time, rather than as discrete acts.  *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir. 2004).  "[C]laims based on discrete acts are timely only where such acts occurred within the limitations period, and . . . claims based on hostile environment are only timely where at least one act occurred during the limitations period." *Id.* at 279–80.  A one-time employment event—including the failure to hire, promote, or train—is a discrete action that "'constitutes a separate actionable unlawful employment practice,'" which places an employee on notice that a cause of action has accrued.  *Id.* at 280 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)).  The denials of Sagaral's merit-increase requests occurred on four separate occasions over four years and were made by different managers.  The proffered explanations differ. Sagaral was ineligible to receive a merit increase in May 2000, October 2002, and January 2003 based on the policy's objective criteria, and was denied a merit increase in August 2004 because he had not performed each aspect of his job adequately.  A continuing violation requires "more than a series of discriminatory acts. [The plaintiff] must show an organized scheme leading to and including a present violation." *Huckabay v. Moore*, 142 F.3d 233, 239–40 (5th Cir. 1998) (holding that the plaintiff's hostile work environment claim

---

it logically would have been sometime after August 3, 2004, when he submitted his written request.  There were 191 days between the date Sagaral submitted his request on August 3, 2004 and the date he filed his charge with the Texas Workforce Commission on February 9, 2005.  Wal-Mart does not argue that the claim based on the denial of the fourth request was untimely.

constituted a continuing violation but that a demotion and a failure to promote were discrete isolated occurrences that put the employee on notice that a cause of action had accrued and were therefore not continuing violations); *see also Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003) (declining to apply the continuing-violations doctrine to plaintiffs' time-barred discrimination claims based on denials of promotions and pay increases).  Sagaral's four requests for pay increases were discrete acts; the claims based on the merit-increase denials in May 2000, October 2002, and January 2003 are barred.  They may, however, be considered as evidence in analyzing the timely filed claim.

As for the August 3, 2004 merit-increase request and denial, Wal-Mart argues that Sagaral failed to make a *prima facie* showing because there is no summary judgment evidence that he was qualified for the merit increase he sought.  Sagaral is within the class protected by Title VII and the ADEA (Asian and 68 years old at the relevant time).  It is undisputed that Sagaral suffered an adverse employment action by being denied a merit increase.  *See Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 193 (5th Cir. 2001) (holding that a denial of a pay raise may constitute an adverse employment action in a retaliation claim).  Sagaral also presents evidence that other employees in the store received merit increases during this period.  (Docket Entry No. 33, Ex. 3).  Wal-Mart argues that Sagaral has not shown that he "exhibited exceptional performance and exceptional results in the execution of [his] job responsibilities," as required for merit increases under the store's policy.  (Docket Entry No. 32, Ex. H).  Wal-Mart also contends that Sagaral cannot show that he was in the

top five percent of the store's employees during that twelve-month period, another requirement for receiving a merit increase.[5] (Docket Entry No. 32 at 12–13).

The Fifth Circuit has held that "a plaintiff challenging his termination or demotion can ordinarily establish a *prima facie* case of . . . discrimination by showing that he continued to possess the necessary qualifications for his job at the time of the adverse action. The lines of battle may then be drawn over the employer's articulated reason for its action and whether that reason is pretext for discrimination." *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1505–06 (5th Cir. 1988). In *Bienkowski*, the court rejected the argument that an employer can defeat an employee's *prima facie* showing by claiming that his supervisors became dissatisfied with his work. In that case, the employer alleged that its former employee failed to make a *prima facie* case under the ADEA because his supervisors had become dissatisfied with his job performance, making him unqualified. *Id.* at 1504–05. The Fifth Circuit explained that to place a plaintiff's qualifications at issue in both the *prima facie* case and the pretext stage is "an unnecessary redundancy." *Id.* at 1505. To "establish a *prima facie* case, a plaintiff need only make a very minimal showing." *See Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996) (quoting *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 639 (5th Cir. 1985)).

---

[5] Wal-Mart's reading of the five percent eligibility requirement is not supported by the policy. The policy terms require that no more than five percent of the eligible employees in any given store may receive merit raises. (Docket Entry No. 32, Ex. H). The policy does not expressly state that those who receive the merit raises must be in the top five percent of the store's employees. The practice may be to award merit increases only to the top five percent of employees, but the policy itself—which is the only evidence in the summary judgment record of the merit-increase program—is not explicitly so limited.

Wal-Mart's policy governing merit-increase requests contains both objective and subjective criteria.  Sagaral has made a *prima facie* showing that he met the objective eligibility criteria for a merit increase:  he had been employed for more than one consecutive year; he did not have an "active coaching" on file; he did not have any "below performance" evaluation ratings; he had not received a merit increase in the past year; it had been more than six months since his last annual performance review; and it was more than ninety days from his anniversary date.  Whether he met the more subjective criteria for measuring qualification for the increase is best analyzed at the pretext stage.  *See Medina v. Ramsey Steel Co.*, 238 F.3d 674, 681 (5th Cir. 2001) (stating that because subjective criteria can be used to mask discriminatory intent, "an employee must demonstrate that he meets objective . . . criteria at the *prima facie* case stage, and the issue of whether he meets subjective . . . criteria is dealt with at the later stages of the analysis").  Wal-Mart's arguments as to qualification are appropriately evaluated in later stages of the analytical framework.

Wal-Mart has proffered a legitimate nondiscriminatory reason for denying Sagaral the pay raise:  that he was not performing his job duties well enough to merit a raise on top of the increase received for the positive performance evaluation.  In addition to selling photographic merchandise, which Sagaral apparently did successfully, his job responsibilities also included processing photographs, which Wal-Mart contends Sagaral refused to do. Sagaral responds that he did not understand his duties to include photo-processing, a belief he formed based on a conversation with his supervisor when he transferred from

23

Pennsylvania to Texas. (Docket Entry No. 33, Ex. 1 at 123:8–125:9). Sagaral testified that he and his supervisor agreed when he transferred that he would focus primarily on sales. (*Id.*). Notably, he did not testify that he understood his job duties *not* to include photo-processing. Instead, he testified that his duties would "primarily be focused on sales." (*Id.* at 123:10–16). This testimony does not raise a fact issue as to whether Wal-Mart's reasons are pretextual. Sagaral has not presented or identified evidence that he performed this part of his job. The Wal-Mart policy on merit increases requires the employee to perform all parts of the job and to exceed the job requirements. Sagaral has not raised a fact issue as to whether his failure to perform part of his job—even a less important part—was a legitimate basis for denying him a merit increase.

Sagaral also contends that younger, nonminority employees were given merit raises although they did not qualify under the company's policy. (Docket Entry No. 33 at 7). The summary judgment record includes a list of employees of the Katy, Texas store who received merit increases between 2003 and 2005. (Docket Entry No. 33, Ex. 3). It does not show whether the listed employees were eligible under the Wal-Mart policy to receive merit raises. While several of the employees who received merit increases were younger than Sagaral and nonminorities, only 17 of the 66 are listed as Caucasian—the rest are identified as African-American, Hispanic, Asian, or American-Indian—and three of the employees are older than Sagaral. This evidence does not raise a fact issue as to whether Sagaral was denied a merit raise because of his race or age or as to whether age or race was a motivating factor in the decision to deny his request. *See Rachid*, 376 F.3d at 310. Sagaral's subjective belief that

he was the subject of discrimination is insufficient to defeat summary judgment. *See Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000). Wal-Mart's summary judgment motion on Sagaral's claim of age and race discrimination as to the denial of his request for a merit raise is granted.

### 2.     *The Claim of Discrimination in the Decision to Fire Sagaral*

Sagaral also contends that his job was terminated because of his age and race. Wal-Mart has proffered a legitimate nondiscriminatory reason: Sagaral was fired for violating the store's policy against sexual harassment. In discriminatory discharge cases based on an employee's alleged violation of a "work rule," plaintiffs "may establish a *prima facie* case by showing 'either that [they] did not violate the rule or that, if [they] did, [employees outside the protected class] who engaged in similar acts were not punished similarly.'" *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995) (quoting *Green v. Armstrong Rubber Co.*, 612 F.2d 967, 968 (5th Cir. 1980)); *see also Simmons v. Rothe Dev., Inc.*, 952 F. Supp. 486, 490 (S.D. Tex. 1997), *aff'd*, 132 F.3d 1456 (5th Cir. 1997). To state a *prima facie* case based on disparate discipline, the employee "must show that [noncomplaining] employees were treated differently under circumstances 'nearly identical' to [theirs]." *Mayberry*, 55 F.3d at 1090 (quoting *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991)); *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001).

Wal-Mart contends that it terminated Sagaral's employment because he violated the company's sexual harassment / inappropriate behavior policy, PD-19, by inappropriately touching Alma Sanchez and behaving inappropriately toward other female employees.

Sagaral responds that he did not violate the policy because he did not touch Sanchez's breast as alleged; rather, he touched the "great job" button pinned on her chest.  He argues that the witness statements were untrue and fabricated in a conspiracy to get rid of him because he had made complaints to management in the past and because Aubry and Sanchez "had an axe to grind."  (Docket Entry No. 33 at 18–20).

The summary judgment evidence shows that Wal-Mart investigated Sanchez's allegation.  In the investigation, several coworkers came forward with statements that they had witnessed Sagaral engaging in such conduct or had experienced it themselves.  The results of Wal-Mart's investigation revealed that Sagaral had committed gross misconduct.  The company's "Coaching for Improvement Policy" states that employees who have engaged in gross misconduct are subject to immediate termination.  (Docket Entry No. 32, Ex. J).  Under company policy, Sagaral's employment was terminated.

Sagaral claims that he did not inappropriately touch Sanchez or do any of the other things alleged.  In *Waggoner v. City of Garland*, 987 F.2d 1160, 1166 (5th Cir. 1993), the Fifth Circuit stated that:

> the validity of the initial complaint is not the central issue, because the ultimate falseness of the complaint proves nothing as to the employer, only as to the complaining employee.  The real issue is whether the employer reasonably believed the employee's allegation and acted on it in good faith, or to the contrary, the employer did not actually believe the co-employee's allegation but instead used it as a pretext for an otherwise discriminatory dismissal.  Thus, the inquiry is limited to whether the employer believed the allegation in good faith and whether the decision to discharge the employee was based on that belief.

*Waggoner*, 987 F.2d at 1165–66.

In *Waggoner*, an employee was fired as a result of sexual-harassment charges made by a female coworker. *Id.* at 1162. The employee sued, claiming that he was discharged because of age discrimination. *Id.* As evidence of discriminatory intent, the plaintiff cited disparaging comments made by coworkers about his age. *Id.* at 1163. The Fifth Circuit affirmed summary judgment in favor of the employer, stating that the plaintiff's summary judgment evidence that he was innocent of sexual harassment was simply irrelevant. "To the extent that [the plaintiff's] summary judgment evidence relates to his innocence of the sexual-harassment charge, it is irrelevant. He must, instead, produce evidence demonstrating that [the defendant] did not in good faith believe the allegations, but relied on them in a bad faith pretext to discriminate against him on the basis of his age." *Id.* at 1166. The employee alleged, but provided no summary judgment evidence, that the employer did not in good faith believe the allegations, but instead relied on them in a bad faith pretext to discriminate on the basis of age. The court of appeals affirmed the summary dismissal on the ground that the allegations alone were insufficient to raise a fact issue that the termination was a pretext for age discrimination. *Id.*

In *Mayberry*, the plaintiff asserted his *prima facie* case by arguing that he did not violate the work rule forming the basis of his termination. *Mayberry*, 55 F.3d at 1091. The defendant argued that the decision to suspend plaintiff "was based solely on its conclusion, following an investigation, that [the plaintiff] was at least partially at fault." *Id.* The court found that the defendant had met its burden of establishing a legitimate, nondiscriminatory

reason for the employment decision.  *Id.*  In deciding whether plaintiff had raised a fact issue

that the employer's proffered reason was a pretext for unlawful discrimination, the Fifth

Circuit noted that the plaintiff had essentially reasserted his *prima facie* case.  The court

noted that "[t]he material fact issue on whether [the plaintiff] was at fault exists only because

[the defendant] admitted that, although it found no evidence of machine error, it could not

be certain that some sort of machine malfunction did not occur.  Nonetheless, in [the

defendant's] judgment it was clear enough that [the plaintiff] was partially at fault."  *Id*.

(footnote omitted).  The court reiterated that "[t]he question is not whether an employer made

an erroneous decision; it is whether the decision was made with discriminatory motive."  *Id*.

> [E]ven an incorrect belief that an employee's performance is
> inadequate constitutes a legitimate, nondiscriminatory reason.
> We do not try in court the validity of good faith beliefs as to an
> employee's competence.  Motive is the issue. . . . [A] dispute in
> the evidence concerning . . . job performance does not provide
> a sufficient basis for a reasonable factfinder to infer that [the]
> proffered justification is unworthy of credence.

*Id*. (quoting *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991)) (alterations in

original).  In *Waggoner*, the Fifth Circuit stated that in cases involving an allegation of

wrongful conduct, followed by an investigation and discharge, the "real issue is whether the

employer reasonably believed the employee's allegation and acted on it in good faith, or to

the contrary, the employer did not actually believe the co-employee's allegation but instead

used it as a pretext for an otherwise discriminatory dismissal."  *Waggoner*, 987 F.2d at 1165.

       In this case, nothing in the record creates a fact issue as to whether Wal-Mart's

termination of Sagaral's employment was made in bad faith.  Wal-Mart made a detailed

investigation, talking to a number of employees, including Sagaral, who provided inconsistent descriptions and explanations of his own conduct and statements to his coworkers.

Sagaral does point to one comment allegedly made by Joe Aubry, the store's assistant manager, who reportedly said that the store "want[ed] younger people here to work." (Docket Entry No. 33, Ex. 1 at 185:5–187:18).  Sagaral states that a coworker named Lisa told him that Aubry made this comment to her just before she was fired.  Wal-Mart objects that this comment is hearsay.  *See* FED. R. EVID. 801(c).  This statement does not fall within any of the exceptions to the hearsay rule and is inadmissible as summary judgment evidence.

Sagaral also testified that Aubry made that comment to him.  (Docket Entry No. 33, Ex. 1 at 186:19–187:11).  This remark is not hearsay, but it does not raise a fact issue as to whether age was a motivating factor in the decision to fire Sagaral.  Comments in the workplace are evidence of discrimination if they are (1) related to the protected class of persons of which the plaintiff is a member; (2) proximate in time to the termination; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue.  *See Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 577 (5th Cir. 2003) (citing *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655 (5th Cir. 1996)).  There is no evidence of when this remark was made.  Sagaral merely remembers it coming before Sanchez's allegations of sexual harassment.  Although Aubry assisted in the investigation into the sexual-harassment charges, the record shows that Brad Coonfield, the district manager, and Earvin Young, a personnel officer in Wal-Mart's corporate headquarters, made

29

the decision to terminate Sagaral's employment after the investigation. (Docket Entry No. 33, Ex. 2 at 49:7–20). The remark does not raise a fact issue as to whether age was a factor in terminating Sagaral's employment because the remark was not made by a decision-maker. *See Patel v. Midland Memorial Hosp. & Med. Ctr.*, 298 F.3d 333, 344 (5th Cir. 2001) (the plaintiff had failed to show that stray remarks raised a fact issue as to the reason for the plaintiff's suspension; the remarks were three racist comments made two years before the suspension by an employee involved in drafting an investigation report about the plaintiff that decision-makers used in deciding to suspend his employment).

Sagaral also argues disparate discipline, citing Joe Aubry as the comparator. Sagaral contends that by rehiring Aubry after he was fired for violating a store policy, Wal-Mart gave special treatment to a younger employee. A disparate discipline claim requires a showing that Wal-Mart treated similarly situated employees charged with similar misconduct differently. *See Okoye*, 245 F.3d at 514. Aubry was the assistant store manager; Sagaral was employed in the photo lab. Aubry was disciplined for violating the company's fraternization policy, PD-22, which expressly provided for the possibility of rehire after ninety days for first-time violators; Sagaral was fired under the store's sexual harassment / inappropriate conduct policy, PD-19, which did not provide for rehire. Aubry and Sagaral had different positions, were not disciplined under the same policies, and the conduct for which Aubry was disciplined was not "nearly identical" to the conduct for which Sagaral was disciplined. *See Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 302–03 (5th Cir. 2000); *Smith v. Wal-Mart Stores (No. 471)*, 891 F.2d 1177, 1180 (5th Cir. 1990).

30

Sagaral has not raised a fact issue as to whether he was treated differently from similarly situated employees.  Because Sagaral has not met his *prima facie* showing of discriminatory termination, that claim fails.  Wal-Mart's summary judgment motion is granted as to this claim.

## IV.    The Retaliation Claim

Title VII makes it an unlawful employment practice for an employer to "discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  To make a *prima facie* showing of retaliation under either Title VII or Section 1981, a plaintiff must show that: (1) he engaged in an activity protected by Title VII; (2) he was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action."  *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004).

The *McDonnell Douglas* framework applies to Title VII retaliation claims.  If a plaintiff makes a *prima facie* showing, the burden shifts to the defendant to proffer a legitimate rationale for the underlying employment action.  If the defendant makes this showing, the burden shifts back to the plaintiff to demonstrate that the employer's articulated reason for the employment action was a pretext for retaliation.  *Id.*  The standard of proof at the pretext stage requires the plaintiff to show that the adverse employment action would not

have occurred but for her protected conduct.  *Septimus v. Univ. of Houston*, 399 F.3d 601 (5th Cir. 2005); *Pineda v. United Parcel Serv., Inc*., 360 F.3d 483, 487 (5th Cir. 2004).

Title VII protects an employee who opposes any unlawful employment practice.  42 U.S.C. § 2000e-3(a).  To satisfy the 'opposition clause,' [the plaintiff] need not prove that [his employer's] practices were actually unlawful, but only that he had 'a reasonable belief that the employer was engaged in unlawful employment practices.'"  *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 428 (5th Cir. 2000) (citing *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1140 (5th Cir. 1981), *cert. denied*, 455 U.S. 1000 (1982)).  In *Burlington Northern & Santa Fe Railway Co. v. White*, 126 S. Ct. 2405, 2414 (2006), the Court held that the antiretaliation provision protects an individual "not from all retaliation, but from retaliation that produces an injury or harm."  *Id.*  "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Id.* at 2415 (quotations omitted).

The causal prong of the *prima facie* retaliation claim on summary judgment requires a plaintiff at least to raise a question about whether the person who subjected him to an adverse employment action was aware of the protected activity.  *See Davis*, 383 F.3d at 320 (citing *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 883 (5th Cir. 2003) ("[I]n order to establish the causation prong of a retaliation claim, the employee should demonstrate that the employer knew about the employee's protected activity.")).  "At this threshold stage, the

standard for satisfying the causation element is 'much less stringent' than a 'but for' causation standard." *Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 191 (5th Cir. 2001).

It is undisputed that Wal-Mart knew of the complaints Sagaral had made. The record contains several copies of Sagaral's November 4, 2004 letter alleging that the denial of the merit increase was the result of discrimination against him. One of those copies contains a handwritten note in the top margin from Sagaral to Coonfield. (Docket Entry No. 33, Ex. 8). The note reads, "Brad, I have my trust and confidence in you and it is for this reason that I am sending this draft for your comments before I fax this to Bentonville. Thanks, Ras." (*Id.*). On November 23, 2004, Earvin Young sent Coonfield an email with Sagaral's letter and asked Coonfield to "complete the redbook [Wal-Mart's internal grievance procedure]." (*Id.*). Sagaral has shown that Coonfield was aware of the discrimination complaint. *See Davis*, 383 F.3d at 320. The record also shows that Sagaral had complained about age and race discrimination in letters to management on November 4 and 17, 2004. Sagaral was fired approximately six weeks after November 4, 2004, when he sent the complaining letter to Wal-Mart's president and CEO. The timing and the fact that Coonfield knew of the complaints are enough to meet the causation prong of the *prima facie* case, which is less stringent than the "but for" standard applied at the pretext stage. *See Fierros*, 274 F.3d at 191.

Sagaral cannot, however, raise a fact issue material to determining whether Wal-Mart's proffered reason for the termination is pretextual. Sagaral had complained to Wal-Mart's management for years on a variety of topics. He had previously accused Wal-Mart

of age and race discrimination.  In 2002, he verbally complained to his supervisors that the denial of his merit increase was based on his age and race.  (Docket Entry No. 33, Ex. 1 at 80:9–82:19).  Despite this long history of complaining, Wal-Mart retained Sagaral, gave him positive performance evaluations, and gave him pay raises annually.

After Wal-Mart received the sexual-harassment complaint from Sanchez, it conducted a ten-step investigation.  The investigation resulted in several other women coming forward with statements that they had either witnessed Sagaral's inappropriate behavior or had experienced it themselves.  Wal-Mart followed company procedure in conducting the investigation, interviewing each employee involved in the incident, including Sagaral.  The investigation concluded that Sagaral had committed gross misconduct, which required the termination of his employment under company policy.  The undisputed evidence in the record shows that Wal-Mart had a legitimate basis on which to fire Sagaral.  Sagaral has not identified evidence in the record, other than his own belief, that Wal-Mart management wanted to get rid of him because of his complaints.  Standing alone, it does not raise a fact issue as to whether Sagaral was fired in retaliation for complaining.  *See Haley v. Alliance Compressor LLC*, 391 F.3d 644, 651 (5th Cir. 2004).  Wal-Mart's summary judgment motion on the retaliation claim is granted.

## V.    The Intentional Infliction of Emotional Distress Claim

Wal-Mart moves for summary judgment on Sagaral's claim that the denial of his requests for merit raises and termination caused him emotional distress.  Sagaral does not address this argument in his response to the summary judgment motion.

34

Under Texas law, the tort of intentional infliction of emotional distress requires that Sagaral prove that (1) Wal-Mart acted intentionally or recklessly, (2) the conduct was extreme and outrageous, (3) Wal-Mart's actions caused Sagaral emotional distress, and (4) the resulting emotional distress was severe. *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 740–41 (Tex. 2003); *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993). To be extreme and outrageous, conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Twyman*, 855 S.W.2d at 621. A claim for intentional infliction of emotional distress does not lie for "ordinary employment disputes." *Tex. State Farm Mut. Ins. Cos. v. Sears*, 84 S.W.3d 604, 611 (Tex. 2002). "Only in the most unusual of circumstances is conduct so extreme and outrageous that it is removed from the realm of ordinary employment disputes." *Canchola*, 121 S.W.3d at 740–41. Even if wrongful, the "termination of an employee does not, standing alone, constitute intentional infliction of emotional distress." *City of Midland v. O'Bryant*, 18 S.W.3d 209, 217 (Tex. 2000).

The summary judgment evidence does not raise a fact issue as to extreme and outrageous conduct. Wal-Mart conducted an investigation into the sexual-harassment charges in accordance with the company's procedures. Wal-Mart provided Sagaral several opportunities to be heard. Sagaral's intentional infliction of emotional distress claim fails, as a matter of law. Summary judgment is granted as to this claim.

## VI.    Conclusion

Wal-Mart's summary judgment motion is granted as to all Sagaral's claims.  Final judgment will be entered by separate order.

SIGNED on April 17, 2007, at Houston, Texas.

_____

Lee H. Rosenthal
United States District Judge